UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| RAY RAYFORD, | ) | No. ED CV 05-00234-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and remanded for further proceedings.

1    Following administrative denials of his application for SSI under
2 Title XVI of the Social Security Act, Plaintiff requested and was
3 granted a hearing before an ALJ, which occurred on September 9, 2003.
4 (AR 133-154.)  There, Plaintiff appeared without counsel. At the
5 outset of the hearing, the ALJ made the following statement, in
6 pertinent part:

>  "The Claimant is present.  He is not presently
>  represented.  I wish to disclose at this time, though, that
>  attorney, William M. Kuntz, was just in to see me about this
>  case.  Mr. Rayford has apparently talked to Mr. Kuntz.  Mr.
>  Kuntz cannot make himself available today, but he has looked
>  at the file.  And he believes that he may be able to help
>  Mr. Rayford especially in updating the file.  And Mr. Kuntz
>  and I have had a conversation in which I have told him that
>  this looks like a case that if properly documented, I can
>  make a decision on fairly soon but that I do not guarantee
>  which way the decision will go and that I would have to
>  discuss with Mr. Rayford whether he wants to proceed with
>  the hearing today or just get an outright postponement to
>  get a representative, in which case he may get a different
>  judge."

(AR 135.)

Shortly thereafter, the ALJ made the following statement on the record:

>  "I told Mr. Kuntz that I would conduct this hearing
>  this morning for the type of information I think the
>  Claimant can provide, but that I would leave the record open

```
           so that Mr. Kuntz, if he does take the case, could get his
           statement of representation and appointment of
           representative in and I would leave the record open while
           Mr. Kuntz attempts to pursue what appears to be needed
           medical evidence of records of treatment for Mr. Rayford, at
           least since the time he has been [INAUDIBLE] incarceration
           and possibly during some of the time that he may have been
           incarcerated, but we cannot do this without Mr. Rayford's
           consent.  Did you understand what I said, Mr. Rayford?
              CLMT:    Yes."
(AR 136.)

     After being informed by the ALJ that he had a right to be
represented at the hearing, but that a postponement would be granted
to get an attorney, if Plaintiff wished, the following colloquy
ensued:
      "CLMT:    I would like Mr. Kuntz to represent me.
      ALJ:     Okay.  You want Mr. Kuntz to represent you?  You do not
               want the hearing today then?
      CLMT:    You had told -- yeah, you can go with the hearing.  But
               is there still some kind of way that he can --
      ALJ:     Yes.
      CLMT:    -- look in my files and stuff?
      ALJ:     Yeah.  I would leave the record open and he could
               examine the file here more completely.  And there may
               be some medical records which I am going to explore in
               the hearing today to find who has been treating you
               that he would get for you and send them in to me before
```

```
1                      I make the decision.
2       CLMT:          Okay.
3       ALJ:           Is that agreeable with you?
4       CLMT:          Yes.
5       ALJ:           And is it all right then if we proceed with the
6                      hearing?
7       CLMT:          Yes."
8  (AR 136-137.)
```

The hearing then proceeded with what appear to be a few minutes of examination of Plaintiff by the ALJ. (AR 140-154.)  With regard to his mental health issues, Plaintiff testified that he first received psychiatric care in prison in about 1985. (AR 146.)  He was released from prison in approximately September 2001, and he testified that he remains under psychiatric care on an outpatient basis in Rialto. (AR 147.)  The ALJ expressed an interest in getting records from the Rialto parole outpatient clinic, and gave the following instruction to Plaintiff:

```
   "Q   Okay.  If you and Mr. Kuntz make an agreement, if he
        represents you, which I think he is going to, but you said
        he is.  Are you going to be able to get into the parole
        outpatient clinic in Rialto so he can get your mental
        records for you?
    A   Yeah.
    Q   Okay.
    A   Yeah.
    Q   You promise you are going to do that?
    A   Yeah.
```

4

> Q  Because that's important to your case.  Do you understand that?
>
> A  Yeah.  Okay."

(AR 147-148.)

Despite the fact that Plaintiff was unrepresented, the ALJ repeatedly instructed Plaintiff to tell Mr. Kuntz to obtain records post-hearing.

At the hearing, Plaintiff was briefly questioned about his current psychiatric care.  He indicated that he attends group sessions, that he hears voices and sees things practically every day, that he has discussed that with his doctor, and that he is on medication based on those symptoms.  He described being on Haldol, Cogentin, and Zoloft. (AR 149-150.)  He told the ALJ that his diagnosis is "paranoid schizophrenic." (AR 150.)  Plaintiff described an imaginary friend named "Larry."  The ALJ then reiterated additional instructions about getting records, telling Plaintiff that "when you and Mr. Kuntz get together, you have got to tell him all of the places where you are getting -- you have gotten medical treatment, especially the present one... Especially the medical treatment that has to do with your schizoid - schizophrenia - paranoid schizophrenia.  Do you understand me?" (AR 153.)

On January 14, 2004, the ALJ issued an unfavorable decision. (AR 12-19.)  No additional records pertaining to Plaintiff's mental health condition were received at the time the decision was written, and none appear in the record.  Instead, the ALJ found that Plaintiff has no severe mental impairment, and relied on the few documents which were in the record, although, as the Court has taken pains to note, on

1 numerous occasions during the hearing, the ALJ opined that the
2 documentation was inadequate.
3   Mr. Kuntz was then retained, and on October 23, 2004, he wrote a
4 letter to the Appeals Council (AR 131-132), pointing out that the ALJ
5 had failed to develop the record with regard to treatment records, and
6 that Plaintiff has an extremely limited education and a severely
7 limited IQ, that he was in special education classes when attending
8 school, never maintained any kind of employment, and has been
9 incarcerated for many years with a lengthy psychiatric history. (AR
10 132.)  This plea fell of deaf ears, and the ALJ's decision became the
11 final decision of the Commissioner.  The Court now reverses that
12 decision, and remands for further hearing.
13   The staff psychologist at San Quentin State Prison handwrote a
14 letter to the "Social Security Administration" on March 23, 2001.  He
15 began the letter by stating that Plaintiff has been a participant in
16 the California Department of Corrections Mental Health Program, and he
17 further stated that Plaintiff has a long and extensive history of
18 major affective disorder, bipolar II.  He stated that Plaintiff "has
19 continued to exhibit progressive mental impairment," that medication
20 has helped somewhat, but that the prognosis is poor.  The psychologist
21 stated, "It is very unlikely this man will ever be able to support
22 himself by means of gainful employment." (AR 87-88.)  The ALJ gave "no
23 weight" to this report, "as no progress reports, crisis contacts, or
24 hospitalizations were appended to the report to support the conclusion
25 that the [Plaintiff] would not be able to work; it is inconsistent
26 with the SA determinations (exhibits omitted); and it is inconsistent
27 with the evaluation by Dr. Guerra (exhibit omitted)." (AR 16.)
28   From the very clear explanatory words of the psychologist's

letter, it is clear that Plaintiff had been under psychiatric treatment while in prison. Moreover, it is fundamental that the ALJ in a Social Security has the obligation to fully and fairly develop the record. This is mandatory even where Plaintiff is represented by counsel. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). In this case, not only was Plaintiff unrepresented, but the ALJ was clearly aware that Plaintiff would, by himself, be unable to find these records. The Court has cited numerous instances during the transcript which support this conclusion. It was inappropriate for the ALJ to instruct Plaintiff to have Mr. Kuntz locate these records, for several reasons. First, Mr. Kuntz was not representing Plaintiff. Second, it was the ALJ's responsibility to develop this record, especially since it was obvious that Plaintiff had been under treatment for his mental health while incarcerated.

In her Cross-Motion, the Commissioner looks for other bases upon which to substantiate the ALJ's conclusion that Plaintiff suffers from no severe mental impairment. For example, support is given to the ALJ's statement that the staff psychologist's conclusion is inconsistent with an evaluation by Dr. Guerra. (See Motion at 4, AR 16, 126-128.) Dr. Guerra's report is styled "Initial Evaluation," on behalf of a parole outpatient clinic. It is uncertain what the purpose of the initial evaluation was, but certainly, Dr. Guerra performed little if no examination, and certainly no testing, during his interview. (See AR at 128.) Both the ALJ and the Commissioner take the position that the San Quentin psychologist's conclusions should be disregarded because they are not supported by medical records or objective evidence, but that Dr. Guerra's conclusions should be given credence, even though Dr. Guerra clearly performed no

7

examination or testing. (AR 89-92.)

The Commissioner and the ALJ also rely upon the consultative psychiatric evaluation ("CE") performed on October 27, 2001 by Dr. Zhang.[1] The ALJ noted Dr. Zhang's assessed limitations with regard to Plaintiff's functioning; that is, that Plaintiff would have "tremendous difficulties maintaining regular attendance in the workplace and dealing with the usual stress encountered in competitive work." (AR 17, 92.) Nevertheless, because Dr. Zhang did not provide a psychiatric diagnosis, the ALJ determined not to accept these and other limitations reported by Dr. Zhang. (AR 17, 91-92.) These limitations include Dr. Zhang's assessment that Plaintiff "will have trouble performing detailed or complex tasks due to poor concentration and attention span. The [Plaintiff] has trouble accepting instructions from supervisors or interacting with coworkers and the public. The [Plaintiff] is not able to perform work activities on a consistent basis with or without any special or additional supervision..." (AR 91-92.) Although Dr. Zhang deferred any diagnosis on Axis I, II, or III, the Commissioner still urges the Court to validate Dr. Zhang's comments that the mental status examination was normal, Dr. Zhang's belief that Plaintiff is likely to adapt to life outside the jail, and that he is expected to improve his social functioning within the next 12 months. (Motion at 5, AR 17, 90-91.) Dr. Zhang's prognosis as to possible future improvement is speculative, and certainly, the Commissioner's position is inconsistent, in urging that the Court affirm a selective interpretation of Dr. Zhang's report; that is, to reject those

---

[1] The referring agency is not identified in the report.

portions which would appear to substantiate a finding of mental impairment, but to accept those portions which do not.

The Commissioner's final argument, that the State Agency physician found no severe mental impairment on a PRT form (Motion at 4, AR 17, 101-114), is unpersuasive, because the State Agency physician did not treat or examine Plaintiff, and there is no substantial evidence in the record to support those findings. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

In sum, substantial evidence fails to support the ALJ's finding that Plaintiff does not have a severe mental impairment. This is a case in which it would seem clear that such a determination cannot be made without an adequate examination and psychological testing. Even without that, there is ample evidence in the record to support a finding of severe mental impairment, thus leading the Court to conclude that error was made at Step Two of the sequential evaluation process.

The Court will not devote substantial time to discussing the issue of the evaluation of Plaintiff's credibility with regard to his mental complaints. The ALJ largely based his credibility decision on the lack of treatment records for Plaintiff's mental complaints, a subject which has already been exhaustively discussed by the Court with regard to the inadequacy of the record. On remand, this issue will be revisited and an evaluation will be made pursuant to the proper standards.

While it is rare that the Court, on remand, orders assignment to a new ALJ, that order will be made in this case. It is apparent to the Court that while the ALJ articulated an awareness of the need to develop records with regard to Plaintiff's mental impairment and noted

Case 5:05-cv-00234-VBK   Document 19   Filed 12/19/05   Page 10 of 10   Page ID #:55

that the existing records were inadequate, he then made no effort to discharge his obligation in that regard, later penalized Plaintiff for the lack of those very records, and selectively interpreted the existing records.

**IT IS SO ORDERED.**

DATED:  December 19, 2005

　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　VICTOR B. KENTON
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE